(No. 37434.—

CHARLES NORVILLE, Appellant, *vs.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.,* Appellees.

*Opinion filed February 1, 1963.*

FREDERICK S. STEIN, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, EDWARD A. BERMAN and BERNARD GENIS, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is a proceeding to review a decision of the Department of Registration and Education suspending plaintiff's real-estate broker's license for a period of six months. The

circuit court of Cook County sustained the decision, and plaintiff appeals directly to this court under the statute. Ill. Rev. Stat. 1961, chap. 114½, par. 8h.

Petras Peteris, and his wife Ona, owners of a property in Chicago, called plaintiff asking that he sell it for them. After some discussion of price plaintiff sent his saleslady, Rita Kolasa, who had them sign an exclusive listing contract. It was for a 90-day period at a price of "$15,000 net to owner plus or minus prorations." Thereafter in the printed portion it recited: "* * * or any less sum which I shall agree to accept, and to pay you the usual commission as established by the Chicago Real Estate Board, on such sale price * * *."

About a week later the saleslady found a buyer for $15,500. A printed form of purchase contract was signed by the purchasers in triplicate. It provided for plaintiff's brokers' commission "as agreed" and related that it had to be signed within four days. The saleslady then took the three counterparts of the contract to Peteris and obtained his signature upon all three. Plaintiff had told her to try for a 6% commission. She wrote on one of the copies in longhand below the signatures, the words: "We agree to pay Norville Real Estate 6% commission as per Chicago Real Estates Board," and Peteris signed below the quoted phrase. The following morning Mrs. Peteris, who had been away working when her husband signed, added her signature to the three copies of the contract and also signed her name below the clause on the one copy. This signed copy was retained by the saleslady and one of the other copies was given the sellers.

Plaintiff retained from the down payment 6% of the sales price or $930. Peteris and his wife objected stating that he was only entitled to $500, the excess over their net figure of $15,000. The sellers then filed a complaint against plaintiff with the Department and the hearing was held which is here on administrative review. Plaintiff thereafter

made repayment to sellers about 20 days prior to the Director's decision.

The saleslady testified that she read the 6% clause to Peteris, asked him if he understood what it meant, and that he smiled and signed it. She further testified that she read everything to Mrs. Peteris before the latter signed the contract and the statement relative to the 6% commission. Peteris and his wife are of Lithuanian extraction and had been in this country for eight years. He said that he did not understand about the 6% and that he did not ask about it nor was it explained to him. His wife denied that the added 6% commission provision was explained to her.

Upon this record the real-estate examining committee found that plaintiff had no right to make an attempt to obtain a greater amount of commission than the $500 over the net figure of $15,000 under the exclusive listing, that the sellers were not made to understand the change in the commission; and that even though they did understand, they were overcharged and should not have been asked for more commission after plaintiff had an offer. The committee expressed the opinion that plaintiff's actions constituted dishonest dealings within the purview of paragraph (d) 14 of section 8, and demonstrated unworthiness and incompetence to act as a real-estate broker within the meaning of paragraph (d) 11 of section 8 of the Real Estate Brokers and Salesman's Act. (Ill. Rev. Stat. 1961, chap. 114½, pars. 8(d) 14 and 8(d) 11.) It recommended that plaintiff's broker's license be suspended for six months and the Director followed that recommendation.

Section 8 authorizes the Department to suspend or revoke any certificate of registration for one or more of enumerated causes. Under paragraph (d) of the section, 17 causes are listed, 13 of which deal with specific acts of misconduct such as substantial misrepresentations, commingling of funds and the like. The remaining four are general in nature. Cause 16 is failure to provide information upon re-

quest following a complaint, and cause 17 is violation of the act or the rules and regulations promulgated by the Department for its enforcement. The remaining two are as follows: Cause 11 reads: "Having demonstrated unworthiness or incompetency to act as a real estate broker or salesman in such manner as to safeguard the interests of the public," and cause 14 reads: "Any other conduct, whether of the same or a different character from that hereinbefore specified which constitutes dishonest dealing." Plaintiff's suspension is based upon these two general causes.

Before going into the question of whether the commission change was understandingly entered into, we turn to the more basic problem of whether the act of approaching the sellers for a change in the commission arrangement constituted dishonesty within the meaning of the statute.

Here we have an "all over" commission arrangement rather than a percentage commission established by the Real Estate Board. It so happens that the offer obtained was greater than the net $15,000 payable to the owners under the exclusive listing contract. But what would be the result if the best offer obtainable was equal to or less than the net in the listing contract? Should the broker be under a moral duty to submit the offer, but be foreclosed from asking for a change in the commission arrangement? As above noted we think the offer should be submitted. By the same token, we see no dishonesty in asking for a new commission arrangement. The broker has spent his time and effort in finding a buyer, even though at a lesser price, and should have the opportunity to ask for a commission. In this case, the listing contract contemplated the possibility of renegotiation by the recital that if a lesser sum were accepted the usual commission on the sale price would be paid. The saleslady's statement that she read the listing contract to the owners is undisputed and it is not charged that they did not understand it.

There is some conflict as to whether the owners under-

stood that by signing the endorsement on one copy of the sales contract they were agreeing to pay a 6% commission. Peteris admitted that the saleslady talked to him about it before she endorsed the new commission agreement upon the contract, and before he signed it. He understood proration of taxes and water bills but maintained that he did not understand anything about the 6% commission. His wife admitted that she signed the commission agreement but denied that its meaning was explained to her. On the other hand, the saleslady said she explained it to Peteris before he signed and that she read it aloud to the wife before her signature was attached. Mrs. Peteris testified that she speaks English "just a little bit" but that she understands it better. A careful reading of her testimony in the record discloses that she understood the questions put to her and while some of her answers were not grammatically correct, she expressed herself quite lucidly.

The saleslady should have written the new commission agreement upon each party's copy, but this appears to have been an error in judgment rather than from any motive of dishonesty. Similarly, she should have used every reasonable effort in dealing with people with the owners' background to make them understand her proposal, but we cannot say that she failed to make an honest effort to the point of incompetency. This appears to have been a misunderstanding rather than a deliberate attempt to overreach.

In our opinion, the finding that plaintiff's actions constituted dishonesty and demonstrated his unworthiness or incompetency to act as a real-estate broker is against the manifest weight of the evidence. The judgment of the circuit court of Cook County must, therefore, be reversed, and the cause is remanded with directions to set aside the decision of the Director of the Department of Registration and Education.

*Reversed and remanded, with directions.*